203 P.3d 383 (2008)
148 Wash.App. 40
Marilyn ROSS and Robert Schwartzberg, husband and wife, Respondent/Cross-Appellant,
v.
Mark BENNETT, a single man, Appellant/Cross-Respondent.
No. 61414-2-I.
Court of Appeals of Washington, Division 1.
December 29, 2008.
As Amended January 27, 2009.
*384 Wright A. Noel, 5tacy Goodman, Carson & Noel PLLC, Issaquah, WA, for Appellant/Cross-Respondent.
Donald E. Eaton, Attorney at Law, Friday Harbor, WA, for Respondent/Cross-Appellant.
APPELWICK, J.
¶ 1 A restrictive covenant requires homes in Cattle Point Estates, a subdivision on San Juan Island, Washington, to be used for "residence purposes only." Residential purposes explicitly allows for tenants. No provision explicitly restricts the duration of the tenancy. We hold that short-term rental of the property for residential purposes is not prohibited. We reverse.

FACTS
¶ 2 In 1997 Marilyn Ross and Robert Schwartzberg, a married couple, bought a house in Cattle Point Estates ("CPE"), located on San Juan Island. Mark Bennett purchased property in CPE in March 2004.
¶ 3 Both properties are subject to the protective covenants and restrictions of CPE ("CPE Covenant"). For purposes of this appeal, the CPE Covenant contains two pertinent provisions. Article II, section 2 limits use such that "[a]ll parcels within said property shall be used for residence purposes only and only one single family residence may be erected on each such parcel." Article VI, section 3 of the covenant also provides that "[a]ny member may delegate, in accordance with the By-Laws [sic], his right of enjoyment to the common areas and facilities to the members of his family, friends and tenants."
¶ 4 In 2002, the CPE Owners Association issued a transient rentals policy stating that a lease/rental shall not be for a period of less *385 than 30 days. On June 21, 2004, Bennett applied to San Juan County for a conditional use permit, proposing that the property be used as a vacation rental property, with stays of less than 30 days. Ross and Schwartzberg submitted a letter opposing the permit request. The County granted Bennett's conditional use permit application.
¶ 5 From 2004-2006, Bennett rented the property four times, deriving $1,150 in total rental revenue. In order to rent his property, Bennett registered with the Washington State Department of Revenue. The Department of Revenue lists Bennett as sole proprietor of a business located at 33 Pond PI., Friday Harbor, WA 98250, the address of his CPE home. The database lists the business type as "721199," which corresponds to "All Other Traveler Accommodation." The record indicates that Bennett paid excise taxes to the Department of Revenue for rental income. But, the State waived collecting any tax, because he only rented twice in 2005.
¶ 6 The record also indicates that other owners in CPE rented their property for periods lasting less than 30 days. For example, in 1996 or 1997, prior to buying a home, Ross and Schwartzberg rented a home in the community for one week. In August 2006, at least two of the homes were being used as rentals. In addition to home rentals, at least two property owners worked from home.
¶ 7 On May 25, 2007, the Ross' filed a complaint in the Superior Court for San Juan County seeking declaratory and injunctive relief to prevent Bennett from renting his property for less than 30 days. Bennett answered, arguing that rentals were permissible.
¶ 8 On October 10, 2007, Bennett moved for summary judgment, which was supported by the declaration of Glenn A. Wahlbrink.
¶ 9 The trial court found that Bennett's lot, number 18, is subject to the CPE Covenant. Further, the court found the CPE Covenant limits the use of all lots to residential use. The trial court also found that Bennett used his property to generate income by renting to persons for less than 30 days. It concluded that rentals for less than 30 days constituted a business use not a residential use; and all business uses of property in CPE, including rentals of less than 30 days, are violations of the covenant. The trial court then permanently enjoined Bennett from renting his property in CPE for periods of time less than 30 days. Bennett appeals the summary judgment ruling.
¶ 10 The trial court also made several evidentiary rulings. First, it granted Bennett's motion to strike portions of both Ross and Schwartzberg's declarations, because they contained inadmissible hearsay, irrelevant and prejudicial information, and legal opinion. Second, the trial court granted Ross and Schwartzberg's motion in limine regarding the Wahlbrink declaration, because it contained inadmissible evidence of the covenant drafter's subjective intent. The parties appeal these evidentiary rulings.

DISCUSSION

I. Admissibility of Declarations

¶ 11 An appellate court reviews a trial court's evidentiary ruling made in conjunction with a summary judgment motion de novo. Warner v. Regent Assisted Living, 132 Wash.App 126, 135, 130 P.3d 865 (2006); Folsom v. Burger King, 135 Wash.2d 658, 663, 958 P.2d 301 (1998); Seybold v. Neu, 105 Wash.App. 666, 678, 19 P.3d 1068 (2001).
¶ 12 In construing a covenant, the primary task of a court is to determine the drafter's intent. Extrinsic evidence is admissible "to determine the meaning of [the] specific words and terms used in the covenants." Hollis v. Garwall, Inc., 137 Wash.2d 683, 696, 974 P.2d 836 (1999). "Only in the case of ambiguity will the court look beyond the document to ascertain intent from surrounding circumstances." Mountain Park Homeowners Ass'n, Inc. v. Tydings, 125 Wash.2d 337, 344, 883 P.2d 1383 (1994). However, admissible extrinsic evidence does not include: 1) evidence of a party's unilateral or subjective intent as to the meaning of a contract word or term; 2) evidence that would show an intention independent of the instrument; or 3) evidence that would vary, contradict or modify the written word. Hollis, 137 Wash.2d at 695, 974 P.2d 836; See also In re Marriage of Schweitzer, 132 *386 Wash.2d 318, 326-27, 937 P.2d 1062 (1997); U.S. Life Credit Life Ins. Co. v. Williams, 129 Wash.2d 565, 569-70, 919 P.2d 594 (1996); Nationwide Mut. Fire Ins. Co., 120 Wash.2d 178, 189, 840 P.2d 851 (1992).

A. Wahlbrink Declaration

¶ 13 Bennett offered the declaration of Glenn Wahlbrink in support of his motion for summary judgment. On appeal, he claims the trial court erred when it granted Ross and Schwartzberg's motion in limine to exclude the Wahlbrink declaration. He argues that the Wahlbrink declaration is admissible evidence of the circumstances when the covenant was drafted.
¶ 14 The Wahlbrink declaration contained the following:
1. I am over the age of 18 and competent to testify to the following facts based on my personal knowledge.
2. I was one of the original owners and developers of the real property on San Juan Island that is now known as Cattle Point Estates. The other original owners were all my relatives.
3. As the developers of the property we drafted protective covenants that would apply to all of the lots in Cattle Point Estates. Those restrictive covenants are attached hereto as Exhibit A.
4. I remember the discussions regarding what we as the developers were concerned with and what we were trying to prevent when we adopted the restricted covenants.
5. Any activities that the drafters were concerned about prohibiting on the lots, was specifically addressed in the restrictive covenants.
6. When we drafted the restrictive covenants drafted [sic] one of our primary concerns was with regard to people using camping trailers and other mobile structures on their lots. That issue was addressed in paragraph 11 of Section II.
7. It is my understanding that one of the issues in the above captioned case is whether the restrictive covenants prohibit lot owners from renting their homes out on a short term basis.
8. The restrictions in paragraph 2 of Section II were not intended to prohibit summer rentals. The restriction for residence purposes only was intended to prohibit brick and mortar business from being run from one of the lots in Cattle Point Estates.
9. When the covenants were signed in 1978 the drafters were aware of the summer or short term rental issue. At that time property on the island was being rented for less than 30 days particularly in the summer for vacationers. We did not intent [sic] to prohibit such rentals when we drafted the covenants.
10. In fact we modeled the restrictive covenants after covenants in neighboring community established by friends. Those friends were at that time renting out property in their community for vacation rentals.
11. We never discussed prohibiting summer or short term rentals.
12. We would not have wanted to prohibit such rentals as it would have decreased the marketability of the lots. It was anticipated that people might want to buy the lots as vacation homes and then rent them out when they were not occupying the homes.
13. We specifically anticipated people renting their homes within Cattle Point Estates as vacation or long term rentals. Because we anticipated owners renting their property to vacation renters, we included `tenants' as individuals that were entitled to use the common areas and facilities of Cattle Point Estates.
¶ 15 We agree with the trial court that paragraphs 4, 5, 6, 8, 12, 13 are inadmissible statements of subjective intent, prohibited under Hollis. 137 Wash.2d at 696, 974 P.2d 836. Likewise, we hold that the last sentence in paragraph 9 is subjective evidence of intent. We conclude, however, that the trial court erred in excluding paragraphs 1, 2, 3, 7, 10, 11, and the first two sentences *387 of paragraph 9. These portions of the declaration are admissible evidence of the context in which the covenant was formed or admissible statements about the current case.

B. Ross Declaration

¶ 16 Ross and Schwartzberg claim the court erred when it struck portions of the Ross declaration. Paragraph 7 of the Ross declaration was excluded, because it included unauthenticated documents. Indeed, exhibit A, which the paragraph references includes two letters to a government agency. These letters are uncertified. The trial court did not err in excluding this portion of the declaration.
¶ 17 Paragraphs 8-15 were excluded because they contained legal opinion, were irrelevant, and prejudicial. Indeed, Ross describes her own involvement with the CPE Association including her own understandings about the covenant's restrictions. Ross argues that it shows the CPE Association actively resisted short term rentals. But, the declaration speaks of Ross' own involvement, not that of the board more generally. The trial court did not err in striking those portions of the declaration.

C. Bornholdt Declaration

¶ 18 Ross and Schwartzberg argue that the trial court abused its discretion when it granted Bennett's motion to strike portions of the Bornholdt declaration. Bornholdt was a member of the CPE Association Board. In his declaration, Bornholdt recalls that the board passed a policy on rentals, which was not intended to change or modify the CPE Covenant. Additionally, the Bornholdt declaration refers to conversations between board members about the legal effect of the CPE Covenant. The trial court did not err in holding the content to include inadmissible hearsay.

II. Covenant

¶ 19 A motion for summary judgment may be granted when there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. CR 56(c). The burden is on the moving party to show there is no genuine issue of material fact. Vallandigham v. Clover Park School Dist. No. 400, 154 Wash.2d 16, 26, 109 P.3d 805 (2005). All facts and reasonable inferences are viewed in the light most favorable to the nonmoving party. Atherton Condo. Apartment-Owners Ass'n Board of Directors v. Blume Dev. Co., 115 Wash.2d 506, 516, 799 P.2d 250 (1990). "If the moving party satisfies its burden, the nonmoving party must present evidence that demonstrates that material facts are in dispute." Id. Summary judgment is proper if, in view of all the evidence, reasonable persons could reach only one conclusion. Vallandigham, 154 Wash.2d at 26, 109 P.3d 805. This court reviews a trial court's summary judgment order de novo. Folsom v. Burger King, 135 Wash.2d at 663, 958 P.2d 301.
¶ 20 When we construe restrictive covenants, our primary task is to determine the drafter's intent. Wimberly v. Caravello, 136 Wash.App. 327, 336, 149 P.3d 402 (2006). While interpretation of the covenant is a question of law, the drafter's intent is a question of fact. Id. We examine the language of the covenant and consider the instrument in its entirety. Bauman v. Turpen, 139 Wash.App. 78, 89, 160 P.3d 1050 (2007). We review questions of law de novo. Bauman 139 Wash.App. at 86, 160 P.3d 1050. Questions of fact are reviewed for substantial evidence. Bauman, 139 Wash.App. at 87, 160 P.3d 1050. But where reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law. Owen v. Burlington N. and Santa Fe R.R. Co., 153 Wash.2d 780, 788, 108 P.3d 1220 (2005).
¶ 21 Historically, Washington courts have also held that restrictive covenants, being in derogation of the common law right to use land for all lawful purposes, will not be extended to any use not clearly expressed, and doubts must be resolved in favor of the free use of land. Burton v. Douglas County, 65 Wash.2d 619, 622, 399 P.2d 68 (1965). But, in conflicts between homeowners as to interpretation of restrictive covenants, courts should place special emphasis on arriving at an interpretation that protects homeowners' collective interest. Lakes at Mercer Island Homeowners Ass'n v. Witrak, 61 Wash.App. 177, 181, 810 P.2d 27(1991).
*388 ¶ 22 Bennett argues that the trial court erred in granting summary judgment and enjoining his short-term rental of his house when it concluded that rentals of less than 30 days are business uses, not residential uses, which are prohibited under the CPE restrictive covenant. The trial court found "[s]aid Protective Covenants and Restrictions limit the use of all lots in Cattle Point Estates to residential purposes only." Having found that the covenant prohibits non-residential/commercial uses, the trial court considered whether Bennett's use of the property was commercial or residential in nature. It concluded that "[r]entals for periods of less than Thirty (30) days constitute a business use and not a residential use." Further, "[a]ll business uses of property in Cattle Point Estates, including rentals for periods of less than Thirty (30) days, are a violation of the Protective Covenant and Restrictions of Cattle Point Estates." Bennett contends that because the CPE Covenant expressly allows for rentals, a rental for any period of time is permissible.
¶ 23 Ross and Schwartzberg acknowledge that the CPE Covenant permits a homeowner to rent his or her property for use as a residence. But, they contend that a critical distinction exists between a homeowner renting a home for long term use as a residence and as short-term vacation rental business used to generate income.
¶ 24 Ross and Schwartzberg argue that the term "residential" or "residence purposes" in a restrictive covenant prohibits any business use. Metzner v. Wojdyla, 125 Wash.2d 445, 886 P.2d 154 (1994) (operation of licensed child daycare facility violated covenants restricting use of property to residential purposes only); Mains Farm Homeowners Ass'n v. Worthington, 121 Wash.2d 810, 854 P.2d 1072 (1993) (for profit adult family home violated covenant stating "lots ... shall be used for single family residential purposes only" due to the commercial nature of the use); Hagemann v. Worth, 56 Wash.App. 85, 91, 782 P.2d 1072 (1989) (defendant was enjoined from operating a business providing foster care to elderly people on property when restrictive covenant prohibited "business, industry or commercial enterprise of any kind or nature"). The cases cited by Ross and Schwartzberg, do not compel this court to conclude that a vacation rental is a business use. Bennett proposes a rental of the property that is identical to his own use of the property, as a residence, or the use made by a long-term tenant. The owner's receipt of rental income either from short or long-term rentals, in no way detracts or changes the residential characteristics of the use by the tenant.
¶ 25 Second, Ross and Schwartzberg argue that vacation rentals are businesses, subject to State excise tax. We disagree that because vacation rentals, unlike long-term rentals, are subject to excise tax, they are prohibited by the CPE Covenant. Ross and Schwartzberg fail to establish that Washington business classifications for tax purposes were relied on by the drafters of the covenant. Likewise, whether the short-term rental is subject to state tax does not alter the nature of the use. We decline to read a distinction between long and short-term rentals into the CPE Covenant, where none expressly exists.
¶ 26 We agree with Bennett that the trial court erred in finding that short-term vacation rentals were prohibited by the CPE Covenant. On its face, the CPE Covenant does not prohibit the short-term rental of Bennett's house to a single family who resides in the home. The CPE Covenant merely restricts use of the property to residential purposes. Renting the Bennett home to people who use it for the purposes of eating, sleeping, and other residential purposes is consistent with the plain language of the CPE Covenant. The transitory or temporary nature of such use by vacation renters does not defeat the residential status. This is consistent both with the evidence of context and with preserving the free use of the land.
¶ 27 We reverse the trial court's order granting summary judgment to Ross and Schwartzberg and remand for entry of judgment in favor of Bennett.
WE CONCUR: SCHINDLER, C.J., and BECKER, J.