2014 DEC 22 AM 3:46


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| GEORGE LIGHTNER, | ) | No. 70746-9-I |
| Appellant, | ) ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| CHAD SHOEMAKER and JANE DOE SHOEMAKER, husband and wife and the marital community composed thereof, | ) ) ) ) | |
| Respondent. | ) ) ) | FILED: December 22, 2014 |

APPELWICK, J. — Lightner sued Shoemaker for injunctive relief when he refused to trim cedar and arborvitae trees on his property that obstruct Lightner's view. Both properties are subject to a covenant that restricts the removal of certain plants and trees and limits certain plants and trees to six feet in height. The trial court found this covenant ambiguous, interpreted it not to apply to naturally occurring growth, and applied the six foot limitation to Shoemaker's artificially planted arborvitae trees but not to his naturally occurring cedar trees. We conclude that the trial court erred in finding the covenant ambiguous. The covenant proscribes removal of only natural growth that was consistent with the owner's plan of development. It imposes a six foot height limitation on all trees and shrubs not protected under the owner's plan of development. No evidence was presented as to whether Shoemaker's trees were part of the owner's plan of development. We reverse and remand for further proceedings.

## FACTS

George Lightner and Chad Shoemaker live in Birch Bay Village (Birch Bay). Birch Bay is a residential community with a golf course, a marina, lakes, community streets, and other common property. The marina is at the bottom of a hill, and there are several houses on the surrounding hillside. Several of the community's properties have sweeping views of the mountains and other community amenities. The community has many tall trees, some over 60 feet tall.

In 1966, Birch Bay Investors recorded the "Declaration of Rights, Reservations, Restrictions and Covenants of Birch Bay Village" (Covenants) applicable to every lot or parcel in the community. In addition to establishing covenants on all of the land, this document created the Birch Bay Village Community Club Inc. (BBVCC)[1] and the Architectural Control and Maintenance Committee (ACC).

Lightner purchased his property, lot 31, on April 15, 1987. At the time Lightner purchased the property, he was aware of covenants on the land. In fact, Lightner contends he would not have purchased the land without a covenant protecting his views. Lightner began construction on a home in 2002.

Shoemaker purchased his property, lot 29, on February 4, 1999. His property is adjacent to and downhill from Lightner's property. The Covenants apply to both the Lightner property and the Shoemaker property.

The primary subject of this appeal is paragraph 8(h) of the Covenants. Paragraph 8(h) imposes two distinct restrictions: one on the removal of certain trees or natural shrubbery, the other a six foot height limitation on some trees, hedges, shrubbery, or

---

[1] The BBVCC is essentially a homeowner association.

plantings in the community. It provides the ACC the authority to waive either of these restrictions in writing.[2]

When Lightner purchased his property, he enjoyed a virtually unobstructed view. The lot had a view of Birch Bay, the Strait of Georgia, the Birch Bay Marina, and Mount Baker. At the time of the purchase, there were trees growing on the neighboring property near the common boundary line. Many of these trees were well above six feet tall. The Shoemakers' predecessor in title either topped the trees on the boundary line or granted Lightner permission to do so in order to preserve Lightner's view.

The trees at issue consist of a row of arborvitaes on the property line between the Lightner and Shoemaker properties and an apple tree, two Douglas firs, and 42 cedar trees on the Shoemaker property. When Shoemaker purchased the property, all of the cedar trees at issue were already there. But, Shoemaker planted the row of arborvitae trees along the back property line himself, and the trees have grown to be over six feet tall. The cedar trees on the property have also grown in excess of six feet in height, obscuring Lightner's view.

Lightner made requests to trim the trees directly to Shoemaker and also requested assistance from the BBVCC. Since 2005, Shoemaker has denied the requests to trim the trees to six feet[3] or cut them down altogether. The BBVCC contacted Shoemaker

---

[2] The Covenants can be amended by official action and approval of the lot owners. Paragraph 12 of the Covenants stipulates that the Covenants enumerated in paragraph 8 were to run with the land for 25 years and thereafter be automatically extended for successive periods of 10 years unless a majority of the then owners agree to extinguish or change the covenants and restrictions in whole or in part.

[3] The parties disagree as to whether Lightner always wanted Shoemaker to trim the trees to six feet or instead just to the Shoemakers' roof line. This dispute is immaterial to the interpretation of paragraph 8(h).

3

informing him of Lightner's wishes, but ultimately said, "This issue is between you and your neighbors." The BBVCC's position is that if the parties could not work it out as "good neighbors," the homeowners should take their dispute to court as the Covenants provide.[4] After another of Lightner's requests, BBVCC's general manager wrote Lightner informing him that paragraph 8(h) had never been used in deciding a tree issue in the history of Birch Bay. Further, he informed Lightner that the height of plantings and maintenance of trees, shrubs, and other vegetation is a matter of "'good neighbor/neighborhood'" policy and is strongly encouraged.

On February 15, 2011, Lightner sued Shoemaker for injunctive relief and enforcement of paragraph 8(h). Lightner sought a permanent injunction prohibiting Shoemaker from allowing any of his trees, hedges, shrubs, and/or plantings to grow to heights in excess of six feet per the terms of paragraph 8(h). Additionally, Lightner sought attorney fees and costs.

The trial court found that the Covenants had not been abandoned, a finding not challenged on appeal. It found that the Covenants were unclear and ambiguous. Construing the two restrictions together, the court found that the Covenants' clear intent was to preserve the natural growth. It concluded that the restrictions did not require the protection of views.

---

[4] Paragraph 14 of the Covenants states, "[I]n the event that the community club fails to take appropriate action for the enforcement of the covenants and restrictions hereof within a reasonable time after a violation or threatened or attempted violation is brought to its attention in writing, any person or persons then owning lots within the said property may take such steps in law or in equity as may be necessary for such enforcement."

Based on those conclusions, the trial court interpreted paragraph 8(h) to require trimming of only "human-planted" trees or shrubs to six feet in height. Thus, it concluded that the arborvitae Shoemaker planted were subject to the six foot limitation. It determined that the cedar trees on Shoemaker's property were naturally occurring and were therefore not subject to the limitation in the Covenant.[5] Further, it concluded that neither party substantially prevailed in the litigation and that no attorney fee award to either party was reasonable. The trial court entered an order the same day memorializing its conclusions. That order did not address the merits of Lightner's request for injunctive relief.

Lightner filed a motion for reconsideration on June 17, 2013, arguing that one of the purposes of paragraph 8(h) is to preserve views in the community and that the Shoemakers' cedar trees are also subject to the Covenant's height restrictions. The trial court denied Lightner's motion. Lightner appeals the findings of fact and conclusions of law, the superior court's June 7, 2013 order, and the order denying his motion for reconsideration.

## DISCUSSION

### I. Plain Meaning of Paragraph 8(h)

The interpretation of the language in restrictive covenants is a question of law. Day v. Santorsola, 118 Wn. App. 746, 756, 76 P.3d 1190 (2003). Questions of law are subject to de novo review. Mariners Cove Beach Club, Inc. v. Kairez, 93 Wn. App. 886, 890, 970 P.2d 825 (1999). We must give effect to all the words, not read some out of the covenant.

---

[5] The trial court does not appear to have entered an order with respect to the apple tree or the Douglas fir trees.

5

See Ross v. Bennett, 148 Wn. App. 40, 49, 203 P.2d 383 (2008) (courts examine the language of the covenant and consider the instrument in its entirety); RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.1 (2000) (a servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument).

Paragraph 8(h) provides two distinct restrictions, each of which is subject to waiver:

> Trees, shrubs. No trees or natural shrubbery shall be removed unless approved in writing by the architectural control and maintenance committee, it being the intention to preserve natural growth, in accordance with the Owner's plan of development. No trees, hedges, shrubbery or plantings of any kind whatsoever in excess of six feet in height shall be placed, planted or maintained on any of the said property, nor shall any such tree, hedge, shrub or planting be allowed to grow in excess of such height, without written permission of the architectural control and maintenance committee.

Though not a model of clarity, we do not find the restrictions to be ambiguous.

The first limitation, the removal restriction, restricts removal of natural growth. This sentence is perhaps more easily understood by considering its statement of intent ahead of its directive:

> It being the intention to preserve natural growth, in accordance with the Owner's plan of development, no trees or natural shrubbery shall be removed unless approved in writing by the architectural control and maintenance committee.

The sentence clearly states the drafter's intent. The intention to preserve natural growth is not absolute. Rather, it is conditioned by the next clause, "in accordance with the Owner's plan of development."

The record contains no evidence pertaining to the owner's plan of development. We thus cannot say whether the removal restriction protected only vegetation in existence at the time the Covenants were written, or whether it also protected natural growth—not yet in existence but contemplated to occur in the future—in designated areas of the

6

development. However, we can say that the reference to the owner's plan of development would have no purpose and would have been omitted if the intention was to preserve all natural growth everywhere on the property. See Ross, 148 Wn. App. at 49; RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.1 (2000). Consequently, we reject that reading of the removal restriction.

The second sentence, the height restriction, is a distinct restriction with three components:

> No trees, hedges, shrubbery or plantings of any kind whatsoever in excess of six feet in height shall be placed, planted or maintained on any of the said property, nor shall any such tree, hedge, shrub or planting be allowed to grow in excess of such height, without written permission of the architectural control and maintenance committee.

This sentence may be more easily understood by moving the negatives from the nouns to the verbs, replacing "such" with the specific vegetation to which it refers,[6] and stating the three propositions as separate sentences:

> Trees, hedges, shrubbery, or plantings of any kind whatsoever in excess of six feet in height shall not be placed, planted, or maintained on any of the said property. Trees, hedges, shrubbery or plantings of any kind whatsoever whether placed, planted or maintained shall not be allowed to grow in excess of six feet in height. The architectural control and maintenance committee may waive these restrictions by written permission.

In contrast to the removal restriction, this restriction is absolute. It applies to all plants. It does not state an exception for naturally growing plants. In fact, the word natural does not appear in this sentence.

---

[6] In the second clause of paragraph 8(h), if the term "such" was read to include the phrase "in excess of six feet in height," the restriction on allowing trees to grow to over six feet would add nothing. If "such" was read to exclude the terms "placed, planted or maintained" the clause would still apply to natural as well as placed or planted trees and shrubs. No other reading of the language appears reasonable.

The trial court found that the words "or maintained" must apply to only "placed or planted" trees and shrubs. It then concluded that the height restriction applied to only placed or planted trees and had no application to natural growth. But, this interpretation is without merit. Retaining a naturally growing tree or shrub on one's property is maintaining that tree or shrub, just as much as is keeping a tree or shrub that a previous owner may have artificially placed or planted. It was error to read the words "or maintained" out of the covenant as a means to exempt natural growth from the height restriction.

Imposing the six foot height restriction might threaten the lives of the trees at issue here and necessitate their removal. But, the protection against removal of natural vegetation attaches to only the natural vegetation that was a part of the owner's plan of development—not to all natural growth on the property subject to the Covenants. The testimony suggested the cedar trees at issue were 29-37 years old.[7] Based on this testimony, these trees did not exist when the Covenants were recorded. Whether these trees are subject to protection under the removal restriction depends on the contents of the owner's development plan.

The plan is not in the record before us. Nonetheless, it is not inconceivable that the Owner's plan of development designated certain areas where natural vegetation— even natural vegetation not yet in existence but contemplated to occur in the future—was to be protected. Remand is necessary to allow the parties an opportunity to establish whether the cedar trees were part of the Owner's plan of development.

---

[7] This testimony was offered by Shoemaker's expert arborist. It was offered to prove that the cedar trees resulted from natural seeding rather than artificial planting. The ages of the trees were otherwise not specifically at issue at trial.

Based on our interpretation of paragraph 8(h), we find no error as to the conclusion that the arborvitae are subject to the six foot height limitation. Nor do we find any error as to the conclusion that paragraph 8(h) did not create view rights. The restrictions address vegetation and never mention views. The rules adopted by the ACC make it clear that everyone understands that trees may impair views and that views are important.[8] However, the fact that the Covenants grant the committee unfettered discretion to waive the restrictions in paragraph 8(h) is convincing evidence that no absolute view rights or easements were intended.

In light of the need for remand, we decline to consider whether the trial court erred when it failed to address the issue of a permanent injunction enforcing the Covenants between the parties. Lightner will have an opportunity to address the issue below.

---

[8] Paragraph 8(h) is devoid of explicit "view protection" language, but the BBVCC acknowledged that the height of trees affects views within the community. On February 18, 1999 the BBVCC adopted the Architectural Rules and Regulations. Rule 12.11 governs "trees and shrubs." It states:

> No trees or shrubs, except natural willows, alders and cottonwoods, shall be removed unless approved in writing by the ACC. The intention is to preserve natural growth within the Village.

> . . . [T]he height of plantings and maintenance of trees, shrubs, and other vegetation is a matter of "good neighbor/neighborhood" policy and is strongly encouraged. . . . Planted trees or shrubs that infringe upon neighbors' views should be reduced or removed. This is a matter of good reason, judgment, and conscience, and is reciprocal between neighbors.

In July 2010, the architectural rules were revised. Those architectural rules include a similar provision for "view infringement." Rule 10.4.2 provides:

> Trees or shrubs that infringe upon neighbors [sic] views are to be dealt with between neighbors. This is a matter of good reason, judgment, and conscience, and is reciprocal between neighbors. Lot owners should keep their trees and shrubs trimmed, de-limbed or topped so as not to infringe on neighbors [sic] views.

## II. Attorney Fees

A prevailing party may recover attorney fees if they are authorized by statute, equitable principles, or agreement between the parties. Wiley v. Rehak, 143 Wn.2d 339, 348, 20 P.3d 404 (2001). If neither party wholly prevails, then the party who substantially prevails is the prevailing party, a determination that turns on the extent of the relief afforded the parties. Transpac Dev., Inc. v. Oh, 132 Wn. App. 212, 217, 130 P.3d 892 (2006).

Paragraph 14 of the Covenants provides for attorney fees to the prevailing party in any action taken to enforce the Covenants and its restrictions. Based on its interpretation of paragraph 8(h), the trial court concluded that neither party substantially prevailed in the litigation. Consequently, it denied both parties' requests for attorney fees.

Both Lightner and Shoemaker argue that they are entitled to attorney fees on appeal under RAP 18.1. Lightner also argues that he is entitled to costs on appeal under RAP 14.2 and on remand.[9] RAP 18.1(i) authorizes this court to direct that the amount of fees and expenses be determined by the trial court after remand.

Neither party is the prevailing party on appeal. As a result, the attorney fee awards for trial and on appeal shall be made by the trial court upon resolution of the case on remand. See Stieneke v. Russi, 145 Wn. App. 544, 571, 190 P.3d 60 (2008) (finding that because the prevailing party was not yet determined, the court of appeals need not yet address the issue of fees); RAP 18.1(i).

---

[9] Paragraph 14 of the Covenant clearly provides that the prevailing party is entitled to attorney fees, but it does not say anything about costs. Lightner has provided no additional authority indicating that he would be entitled to costs below.

We reverse the trial court's application of the Covenants as to the cedar trees on the Shoemakers' property and remand to the trial court for further proceedings.[10]

WE CONCUR:

---

[10] Lightner assigns error to several conclusions of law and findings of fact. Additionally, he assigns error to portions of the findings of fact that he claims were mischaracterized and should have been conclusions of law. Because we reverse, we need not address these challenged findings and conclusions individually.