IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| EDWARD COYNE and PATTY COYNE, | ) | No. 35825-9-III |
| and their marital community; DANIEL F. | ) | (consolidated with |
| RICHEY and PAMELA J. RICHEY, and | ) | No. 36012-1-III) |
| their marital community; JON SWANSON | ) | |
| and JANICE SWANSON, and their | ) | |
| marital community; BRIAN HUDSON; | ) | |
| DOUGLAS SHIMA; NEOMI GARZA; | ) | |
| POLLY MATHEWS and MARK | ) | |
| MATHEWS, and their marital community; | ) | |
| KENNETH PEDERSEN and JOAN | ) | |
| PEDERSEN, and their marital community; | ) | |
| SHARON HAPTONSTALL; PATRICIA | ) | |
| STROMER; and LLOYD KELLOGG and | ) | |
| MILDRED KELLOGG, and their marital | ) | UNPUBLISHED OPINION |
| community, | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GRIGG FAMILY LLC; and THE CITY | ) | |
| OF WEST RICHLAND, | ) | |
| | ) | |
| Appellants. | ) | |

PENNELL, J. — Grigg Family, LLC (Grigg) and the City of West Richland (City),

Washington, appeal a summary judgment order declaring their current and planned

uses of lots within the Canal Heights subdivision of the City in violation of restrictive

covenants. We affirm the trial court's summary judgment order in part. We agree with

the trial court that Grigg's proposed commercial development violates the governing

covenant, which requires all lots to meet the description of "residential." However, the

City's current lot use is consistent with the residential character requirement. The trial

court's judgment to the contrary must be reversed.

FACTS

In 2011, Grigg purchased lot 29 in the City's Canal Heights subdivision. Two

years later, both Grigg and the City purchased lots, specifically lots 1 and 28 respectively.

One of the lots owned by Grigg contains a residence. In July 2013, the City enacted an

ordinance that rezoned lots 1, 28, and 29 from low density residential to commercial-

general.

Grigg owns several hardware stores. The company purchased lots 1 and 29 with

an intent to build a new hardware store and accompanying parking lot. The City currently

uses lot 28 as a public park and community garden, and for stormwater drainage. The

community garden allows members of the public to pay the City a $10 permit fee to use

the garden space to grow their own crops.

Edward Coyne and others (Respondents) are lot owners in the Canal Heights

subdivision. The Respondents have engaged in a variety of unsuccessful efforts to

challenge the City's zoning decision and stop Grigg from constructing a hardware store

in Canal Heights.

After prior efforts failed, the Respondents sought a declaratory judgment in Benton County Superior Court, claiming restrictive covenants governing the lots in Canal Heights prohibit construction of a hardware store. The Respondents also challenged the City's use of lot 28. The Respondents argued that because restrictive covenants designate the lots in Canal Heights as residential, commercial uses of the lots by Grigg and the City are prohibited.

The restrictive covenants state:

1. All lots in said plat, except Lot 30, shall be known and be described as residential lots. No structure shall be erected, altered, placed or to be permitted to remain on any residential building lot other than one detached, single-family dwelling, not to exceed two stories in height, and a private garage for not more than two cars.

2. No residential structure shall be placed on any lot unless prior thereto or simultaneously therewith a septic tank installation is made in a manner approved by the Health Department, and all structures commenced to be built on said lot shall be completed within two years of the date of the commencement of such construction.

3. *No noxious or offensive trade or activity shall be carried on upon any lot nor shall anything be done thereon which may be a nuisance to the remaining lots*. No residential structure shall be erected or placed on any single lot with less than 600 square feet of floor space.

By Amendment recorded January 6, 1949, under auditor's file No. 228638 paragraph 1 above now reads as follows: *all lots in said plat, except lot 30, shall be known and be described as residential lots*.

Clerk's Papers (CP) at 36 (emphasis added).

3

The parties requested the Respondents' declaratory judgment action be decided on cross motions for summary judgment. The trial court issued a decision in the Respondents' favor. The court determined that neither Grigg's proposed hardware store, nor the City's uses of lot 28, were permissible under the terms of the restrictive covenant. Grigg and the City both appeal.

ANALYSIS

An order on cross motions for summary judgment is reviewed de novo. *Wilkinson v. Chiwawa Cmtys. Ass'n*, 180 Wn.2d 241, 249, 327 P.3d 614 (2014). Here, none of the parties suggest there are material issues of fact that require trial. Instead, the issue is how to interpret a restrictive covenant. This involves a question of law, resolved according to rules of contract interpretation. *Id.*

Our primary objective in contract interpretation is discerning the drafter's intent. *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 696, 974 P.2d 836 (1999); *Riss v. Angel*, 131 Wn.2d 612, 623, 934 P.2d 669 (1997). This assessment generally involves a mixed question of law and fact, "'[b]ut where reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law.'" *Wilkinson*, 180 Wn.2d at 250 (quoting *Ross v. Bennett*, 148 Wn. App. 40, 49-50, 203 P.3d 383 (2008)). In determining intent, we will give language "its ordinary and common use" and will not interpret a term in a manner that "defeat[s] its plain and obvious meaning." *Mains Farm Homeowners*

4

*Ass'n v. Worthington*, 121 Wn.2d 810, 816, 854 P.2d 1072 (1993); *see also Riss*,

131 Wn.2d at 621, 623. The language of a restrictive covenant must be examined as

well as the instrument in its entirety. *Wilkinson*, 180 Wn.2d at 250-51.

By its plain terms, the Canal Heights covenant was written to preserve the

residential nature of the protected lots. The opening paragraph of the covenant states

*all lots* in the subdivision (with the exception of lot 30) shall be described and known as

residential. This proviso is then followed by two paragraphs containing specific rules for

residential structures. Paragraph 2 provides residential structures must have a septic tank

approved by the health department. Paragraph 3 states residential structures cannot be

smaller than 600 square feet.

Although paragraph 3 references limits on "trade or activity" undertaken in the

subdivision, this language is fully consistent with a residential character restriction.

Not all trade or commercial activity is inconsistent with residential use. Many small

businesses are operated in a residential setting.

The 1949 amendment is also fully consistent with our understanding that the

covenant is intended to preserve the residential character of the lots within Canal Heights.

Prior to the amendment, the covenant restricted the type of residences that could be built

in Canal Heights. Specifically, the only permissible structures were detached single-

family dwellings, with not more than two stories and a private two-car garage. The 1949

amendment relaxed the rules regarding the types of residences that would be permissible in Canal Heights. After the amendment, the covenant allowed for structures such as multi-family dwellings and three-car garages. However, the rule that all lots within Canal Heights must be residential in nature remained in place.

Based on the foregoing, the Canal Heights covenant must be interpreted to require that all lots within the subdivision (except lot 30) be fairly described as residential. Neither Grigg nor the City seriously challenge this interpretation. Instead, both claim their proposed lot uses are consistent with the covenant and do not undermine the residential nature of the lots. We address the claims of Grigg and the City in turn.

Grigg claims that even after the construction of a commercial hardware store and accompanying parking lot, the Canal Heights lots will still qualify as residential, as required by the restrictive covenant. According to Grigg, this is because the lots will be capable of supporting future residential structures, should the hardware store and parking lot be eventually taken down. Grigg contends we should interpret the Canal Heights covenant in favor of the free use of land, such that if a land use is not expressly prohibited by the terms of the covenant it must be allowed.

Grigg's interpretation of the restrictive covenant conflicts with the modern standard of covenant interpretation. The law used to be that all covenants were construed in favor of the free use of land. *See, e.g.*, *Burton v. Douglas County*, 65 Wn.2d 619, 621-

6

22, 399 P.2d 68 (1965). But this is no longer true. *Wilkinson*, 180 Wn.2d at 249-50.

Now, when faced with a dispute between successors in interest to a restrictive covenant,

we apply a "liberal interpretation" designed "to protect all the property owners' interests."

*Viking Props., Inc. v. Holm*, 155 Wn.2d 112, 120-21, 118 P.3d 322 (2005).

Interpreting the covenant in the manner proposed by Grigg would be contrary to

the collective interests of the Canal Heights landowners. Under Grigg's future use

interpretation, the term "residential" would include almost any type of building or lot

usage. So long as the site could be remediated for residential use at some point in the

future, the residential character would be maintained. This strained interpretation of

"residential" would render the restrictive covenant of little value to landowners who

purchased lots with a current expectation of enjoying a residential neighborhood.

Grigg's interpretation would also result in the absurd result that the Canal

Heights's residential covenant would favor commercial structures over residential ones.

As previously noted, paragraphs 2 and 3 of the restrictive covenant contain size and

septic tank rules for residential structures. No rules are mentioned for commercial

structures. It defies common sense to think that the drafters of a residential restrictive

covenant would intend to place restrictions on the construction of residential structures,

but allow commercial structures to be developed carte blanche. We will not interpret the

covenant in this manner. *Wilkinson*, 180 Wn.2d at 255 ("We reject 'forced or strained'

interpretations of covenant language if they lead to absurd results.") (quoting *Viking*,

155 Wn.2d at 122). Instead, the most sensible interpretation of the covenant is that

nonresidential structures are not allowed in Canal Heights at all (with the exception

of lot 30).

While Grigg's hardware store would violate Canal Heights's restrictive covenant,

the City's storm drain, park, and community garden do not. No nonresidential structures

have been built on the City's lot. In addition, the activities conducted on the City's lot

are consistent with a residential character designation. Residential yards often include

drainage areas, open space, and gardens. While the City charges a fee for use of its

community garden, this circumstance alone does not change the residential nature of the

lot. After all, as previously noted (and contemplated by the covenant) many residences

are used for small business activity. Nothing about the City's current use of lot 28 causes

a strained reading of the covenant or runs counter to the collective interests of the other

lot owners. Thus, the Canal Heights covenant provides no basis for restricting the City's

current lot usage.

In summary, we agree with the trial court that Grigg's proposed hardware

store and parking lot violate the terms of the restrictive covenant and, therefore, the

Respondents are entitled to summary judgment. However, because the City's lot use

comports with the covenant, that portion of the trial court's summary judgment order must be reversed.

CONCLUSION

The trial court's order of summary judgment against Grigg is affirmed. However, the order of summary judgment against the City is reversed. This matter is remanded with instructions for entry of summary judgment in favor of the City.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

Lawrence-Berrey, C.J.

Siddoway, J.

9