IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| TODD and MICHELE HAWORTH, a married couple; and DANA and RHIANNA SHALTRY, a married couple,<br><br>                     Respondents,<br><br>JEREMY and MARLENE CHURCH, a married couple; and ROB and JULIE SMITH, a married couple,<br><br>                     Plaintiffs,<br><br>              v.<br><br>GAIL ALISON, individually and dba ARCADIA FARM & INN,<br><br>                     Appellant. | No. 84643-4-I<br><br>DIVISION ONE<br><br><br><br>UNPUBLISHED OPINION |

BOWMAN, J. — Gail Alison appeals a summary judgment ruling that the "use of her property in operating a vacation rental business" violates restrictive residential covenants. Because issues of material fact remain as to whether Alison provides on-site services to her renters, we reverse and remand for further proceedings.

FACTS

In April 2014, Alison and her then husband bought a lot at 149 Blackbird Lane in Clallam County. Alison's property includes 5.5 acres and a six-bedroom, 4,000-square-foot home. The property also has a swimming pool, tennis court, garden, and small farm, which houses an assortment of animals. Alison's lot is

This opinion bases the citations and pin cites on the Westlaw online version of the cited material.

subject to covenants recorded in a 1994 "Conditions, Covenants, and Restrictions" (CCRs) agreement. The CCRs contain provisions restricting the property to only single-family residential use and prohibiting business or commercial activity.

In July 2014, Alison began advertising rooms for rent on Airbnb.com. From 2015 to 2019, Alison rented up to three bedrooms in her home at any given time. While she usually required a two-night minimum, some tenants stayed for a month or more. Alison does not rent to walk-in guests and has no sign advertising rentals on the property.[1]

Alison obtained a business license in the name of Arcadia Farm and Inn (AF&I) and advertises the rentals through Airbnb under that name. She also maintains a Facebook page advertising the room rentals. Since renting on Airbnb, AF&I has had over 1,800 reservations and generated over $347,702.86, including $11,166.03 in "Host" fees and $24,385.00 in cleaning fees.

Members of the homeowner's association, including Todd and Michele Haworth and Dana and Rhianna Shaltry[2] (collectively Association), began complaining about the excessive traffic on Blackbird Lane from Alison's renters. They also complained that the renters often sped down the road, mistakenly entered other neighbors' properties, and were sometimes rude. On September 16, 2020, the Association sued for a declaratory judgment that Alison's room rentals violated the CCRs and to enjoin Alison from continuing to rent rooms in

---

[1] The record suggests that Alison had a sign on her gate reading "Arcadia Farm and Inn" until she removed it in March 2020.

[2] The Shaltrys are original executors of the CCRs.

her home.[3]

The Association moved for summary judgment, arguing that AF&I is a "business or commercial use that violates the CCRs." In a memorandum decision, the trial court granted summary judgment for the Association. Alison sought discretionary review under RAP 2.3(b)(1) and (2). A commissioner of our court granted review.

ANALYSIS

Alison argues the trial court erred by granting summary judgment for the Association. We agree.

We review orders on summary judgment de novo. Bangerter v. Hat Island Cmty. Ass'n, 199 Wn.2d 183, 188, 504 P.3d 813 (2022). A trial court properly grants summary judgment when the evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id.; CR 56(c). The moving party bears the burden of showing they are entitled to summary judgment. Ross v. Bennett, 148 Wn. App. 40, 49, 203 P.3d 383 (2008). We consider the evidence and all reasonable inferences in a light most favorable to the nonmoving party. Id.

We interpret restrictive covenants de novo as a question of law using the rules of contract interpretation. Wilkinson v. Chiwawa Cmtys. Ass'n, 180 Wn.2d 241, 249, 327 P.3d 614 (2014); Ross, 148 Wn. App. at 49. When we interpret the language of a covenant, our primary task is to determine the drafter's intent,

---

[3] Originally, the lawsuit included Jeremy and Marlene Church and Rob and Julie Smith as plaintiffs. But the court later dismissed them, determining that they lacked standing to enforce the CCRs. Their claims and dismissal are not the subject of this appeal.

considering the instrument as a whole. Ross, 148 Wn. App. at 49. "While interpretation of the covenant is a question of law, the drafter's intent is a question of fact," which we review for substantial evidence. Id. But when reasonable minds could reach only one conclusion, we may determine questions of fact as a matter of law. Id.

Washington courts follow the objective manifestation theory of contracts. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005). "Under this approach, we attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." Id. So, we interpret covenants to ascertain and give effect to its intended purposes. Riss v. Angel, 131 Wn.2d 612, 623-24, 934 P.2d 669 (1997).

> Historically, Washington courts have also held that restrictive covenants, being in derogation of the common law right to use land for all lawful purposes, will not be extended to any use not clearly expressed, and doubts must be resolved in favor of the free use of land.

Ross, 148 Wn. App. at 50. "But, in conflicts between homeowners as to interpretation of restrictive covenants, courts should place special emphasis on arriving at an interpretation that protects homeowners' collective interest."[4] Id.

---

[4] Alison argues we should strictly construe the terms of the CCRs against the Association because the Shaltrys were original co-drafters. See Riss, 131 Wn.2d at 621-22 (rules of strict construction apply when dispute over terms of covenants is among original drafters). Yet when a dispute is not among the makers of the covenants, "but rather among homeowners in a subdivision governed by the restrictive covenants," we do not apply the rules of strict construction against the grantor. Id. at 623. Here, only the Shaltrys were makers of the CCRs. The remaining parties are homeowners governed by the CCRs. Under these circumstances, we decline to apply the rules of strict construction.

"In determining the drafter's intent, we give covenant language 'its ordinary and common use' and will not construe a term in such a way 'so as to defeat its plain and obvious meaning.' " Wilkinson, 180 Wn.2d at 250 (quoting Mains Farm Homeowners Ass'n v. Worthington, 121 Wn.2d 810, 816, 854 P.2d 1072 (1993)). To determine the ordinary meaning of an undefined term, we look to the dictionary. Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wn.2d 869, 877, 784 P.2d 507 (1990). And when examining the covenant language, we must "consider the instrument in its entirety." Wilkinson, 180 Wn.2d at 250.

These three provisions of the CCRs are at issue:

> 5.4   The subject real property shall be used only for single family residential purposes with related out buildings. . . .
>
> . . . .
>
> 5.9   No business or commercial activity[5] shall be permitted, provided, artist's studios and home occupations not involving manufacturing may be conducted so long as no advertising signs are posted on the property, the public is not invited to the property to conduct the home business and no nuisance noises, fumes, or activities would accompany such business activity.
>
> . . . .
>
> 5.12   No sign of any kind shall be displayed . . . except one sign of not more than five square feet advertising the property for sale or rent.

Alison contends that her room rentals amount to a residential use of her property, which complies with the terms of the CCRs. The Association claim the

---

[5] The parties do not distinguish between the terms "activity" and "use." At oral argument, the Association agreed that the term "activity" means "use." Wash. Court of Appeals oral argument, Haworth v. Alison, No. 84643-4-I (Mar. 10, 2023), at 8 min., 23 sec. to 8 min., 28 sec. (on file with court). So, we refer to the term as business or commercial "use" in this opinion.

room rentals are a business use of the property in violation of the CCRs. We conclude that genuine issues of material fact remain as to whether Alison's use is residential or business.

Wilkinson and Ross control our analysis. In Wilkinson, covenants in a Chelan County housing development provided that (1) lots " 'shall be utilized solely for single family residential use,' " (2) lots must not be used for any " 'industrial or commercial use,' " and (3) " '[n]o sign of any kind shall be displayed to the public view on any lot . . . except . . . one sign of not more than [six] square feet advertising the property for sale or rent.' " 180 Wn.2d at 245, 246-47.[6] After several homeowners used their property as short-term vacation rentals, the homeowner's association adopted a policy to prohibit rentals for less than a one-month period. Id. at 247-48. A homeowner challenged the policy in superior court. Id. at 248. The association argued that the short-term vacation rentals amounted to commercial use of the property in violation of the covenants. Id. The trial court ruled for the homeowner. Id.

On direct review, our Supreme Court affirmed. Wilkinson, 180 Wn.2d at 261-62. The court reasoned that the covenants' drafters "specifically anticipated and permitted rentals when they restricted the size of rental signs." Id. at 251. And it determined that this provision, coupled with the lack of any rental duration restriction, showed that the drafters intended to permit rentals without limiting their duration. Id. at 252. The court also held that such rentals do not violate the prohibition of commercial use because the renter uses the home " 'for the

_____

[6] Emphasis omitted.

purposes of eating, sleeping, and other residential purposes.' " Id. (quoting

Ross, 148 Wn. App. at 52). The court distinguished short-term rentals from other

commercial uses, such as when the landowner provides on-site services to their

tenants. Id. at 253 (citing Metzner v. Wojdyla, 125 Wn.2d 445, 451, 886 P.2d

154 (1994) (covenant restricting property to "residential purposes only" prohibited

home day care business); Mains, 121 Wn.2d at 813, 821[7] (covenant requiring

that lots " 'shall be used for single family residential purposes only' " prohibited

owner from using property as an adult family home)); see also Hagemann v.

Worth, 56 Wn. App. 85, 86-87, 90-91, 782 P.2d 1072 (1989) (covenant

prohibiting " 'business, industry or commercial enterprise of any kind or nature' "

did not allow homeowner to provide adult "foster or boarding care").

     In Ross, a covenant in a San Juan Island housing development restricted

homes to " 'residence purposes only.' " 148 Wn. App. at 43-44. A homeowner in

the development rented his property four times for stays of less than 30 days,

earning $1,150. Id. at 44. To rent his property, the homeowner registered with

the Department of Revenue (DOR) as the sole proprietor of a business located at

his home address. Id. And he paid excise taxes on the business' income. Id.

Other homeowners sued, arguing that the short-term rentals amounted to

business use in violation of the covenants. Id. at 44-45. The trial court agreed.

Id. at 45. We reversed, concluding that the short-term property rentals amounted

to residential property use. Id. at 51-52. We reasoned that the short-term

renters used the property for "eating, sleeping, and other residential purposes"

---

[7] Emphasis omitted.

the same way a homeowner would.  Id. at 52.  We also determined that "[t]he transitory or temporary nature of such use," registering the business with DOR, and paying excise taxes did not alter the residential character of the property use.  Id. at 51-52.

Like the covenants in Wilkinson, paragraph 5.12 of the CCRs restricts the usage of signs advertising the property for rent, and the CCRs do not limit rental duration.  This shows that the drafters anticipated and permitted rentals without intending to limit their duration.  And like the homeowners in both Wilkinson and Ross, Alison's renters used the property as she would, to eat and sleep.  Alison obtaining a business license and receiving income from the rentals do not change the nature of use.

The Association argue that Wilkinson and Ross are distinct from this case because those cases "involved communities with an established history of properties being rented to non-residents for vacations."  But they fail to show why that distinction makes a difference.  The courts in Wilkinson and Ross held that short-term rentals amounted to residential use of the property because the tenants used the property as the owner would—for residential purposes.  Whether other neighbors also rented their properties was not a factor in those courts' analyses.

The Association also argue that this case is different than Wilkinson and Ross because unlike home rentals, room rentals "add[ ] to the use of the property beyond Ms. Alison's use."  But they confuse amount of use with its character.  Alison's renters use the property the same way she does, even if they occupy

8

only a single room and the common areas. As a result, their use is residential. Indeed, the Association's proposed interpretation would lead to absurd results. For example, under the Association's reading of section 5.4 of the CCRs, hosting dinner guests or allowing extended family members to stay in the home would violate the covenant because those activities go "beyond . . . Alison's use" of the property. We avoid interpreting contracts in a manner that would lead to absurd results. Mid-Century Ins. Co. v. Henault, 128 Wn.2d 207, 213, 905 P.2d 379 (1995).

Finally, the Association argue that even if Wilkinson and Ross apply here, Alison's room rentals amount to business use because she is providing "on-site services" to her renters. They allege that Alison uses volunteer farm workers to help her clean rooms for her renters for a fee, to grow vegetables, herbs, and flowers for the Airbnb, to make sure "Airbnb guest[s] have a meaningful and enjoyable stay," and to otherwise assist Airbnb guests. According to the Association, these services elevate the room rentals to business use under section 5.9 of the CCRs, which they allege is broader than the commercial use language in Wilkinson. Alison says her volunteer farm workers only "assist with the garden and animals." A trier of fact must resolve these disputed material facts.

Because disputed material facts remain as to whether Alison provides services to her renters sufficient to elevate her room rentals to business or commercial use, we reverse and remand for further proceedings.

9

Attorney Fees

Both parties request an award of attorney fees on appeal. When a contract provides for an attorney fee award, the prevailing party may seek reasonable attorney fees incurred on appeal. First Citizens Bank & Tr. Co. v. Harrison, 181 Wn. App. 595, 607, 326 P.3d 808 (2014); see also RAP 18.1(a). Paragraph 9 of the CCRs provides that in an action to enforce a covenant, "the prevailing party shall be entitled to reasonable attorney's fees and court costs and all expenses including those incurred on appeal." But because there are genuine issues of material fact about whether Alison provides on-site services to her renters, neither party has yet prevailed. We defer to the trial court to determine attorney fees after final resolution of the case. See RAP 18.1(i).

Reversed and remanded for further proceedings.

_____
Bowman, J.

WE CONCUR:

_____        _____
Smith, C.J.                                              Mann, J.